|  |  |  |
|---|---|---|
| MAXMARK, INC., an Illinois Corporation, | ) ) ) | **UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-602 |
| | ) | |
| JEWELRY DESIGNER SHOWCASE INC., a New York Corporation, and ARTHUR DANNUNZIO, individually, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | | |

## COMPLAINT

The Plaintiff, MAXMARK, INC., by and through its attorneys GARDI & HAUGHT, LTD., for its civil action against the Defendants ARTHUR DANNUNZIO, individually, and JEWELRY DESIGNER SHOWCASE INC., alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action occurred in this district.

### Parties

3. The Plaintiff, MAXMARK INC., is a corporation headquartered in Chicago, Illinois.

4. The Defendant, ARTHUR DANNUNZIO, an individual and the President of JEWELRY DESIGNER SHOWCASE INC., resides in New York.

5. The Defendant, JEWELRY DESIGNER SHOWCASE INC., is a corporation headquartered in New York.

### Factual Allegations

1. The Plaintiff is a corporation engaged in the business of selling diamonds and other jewelry.

2. The Defendants are a corporation and an individual engaged in the business of selling and purchasing diamonds and other jewelry.

3. The Defendants own and operate several retail store locations at which they sell diamonds and other jewelry.

4. From approximately November 2015 to March 2020, the Plaintiff sent diamonds and other jewelry to the Defendants on credit.

5. From approximately December 14, 2015 to March 11, 2020, the Plaintiff sent invoices to the Defendants for the value of the diamonds and other jewelry sent to the Defendants by the Plaintiff.

6. From approximately December 14, 2015 to March 11, 2020, the Plaintiff made numerous demands to the Defendants for payment.

7. The Defendants have failed to pay the invoices sent to the Defendants by the Plaintiff.

8. The Defendants have failed to satisfy the Plaintiff's multiple demands for payment.

9. In May 2020, the Plaintiff drafted a Payout Agreement (hereinafter "the Agreement"). *See* the Agreement attached as Exhibit 1.

10. The Agreement states the Plaintiff has sent, and the Defendants have accepted, "delivery of goods," which include diamonds and other jewelry. *See* Exhibit 1.

11. The Agreement requires the Defendants to pay the Plaintiff for these goods. *See* Exhibit 1.

12. The Agreement sets forth a payment schedule allowing the Defendants to pay for the diamonds and other jewelry sold to them by the Plaintiff in installments. *See* Exhibit 1.

13. The Agreement requires Defendants to make the final payments "on or about October, 2020." *See* Exhibit 1.

14. The Agreement was to be signed by the President of the Plaintiff, Binoy Shah, and the Defendants, Jewelry Design Showcase Inc. and Arthur Dannunzio. *See* Exhibit 1.

15. The Agreement states the Defendants owe the Plaintiff $460,110.46. *See* Exhibit 1.

16. The Defendants owe the Plaintiff $460,110.46 for the purchase of an assortment of diamonds and other jewelry. *See* Exhibit 1.

17. On March 6, 2020, the Defendants sent six (6) checks to the Plaintiff: check number 326 for $25,000.00; check number 327 for $25,000.00; check number 328 for $25,000.00; check number 329 for $25,000.00; check number 330 for $50,000.00; and check number 331 for $50,000.00.

18. The Plaintiff negotiated the checks the Defendants sent and deposited them in the bank, but they did not clear.

19. On March 10, 2020, the Plaintiff received documentation from its bank stating that the six (6) checks issued to the Plaintiff by the Defendants were returned as unpaid. *See* Group Exhibit 2.

## COUNT I – BREACH OF CONTRACT

20. The Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

21. The elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) a resulting injury to the plaintiff." *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc.*, 218 F.Supp.2d 974, 976 (N.D. Ill. 2002).

22. Even in the absence of an express contract, an implied-in-fact contract can exist as a result of the parties' actions. *Kohlenrener v. North Suburban Clinic, Ltd.*, 356 Ill.App.3d 414, 419 (1st Dist. 2005).

23. Contracts implied-in-fact "arise from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound." *Trapani Construction Co., Inc. v. Elliot Group, Inc.*, 64 N.E.3d 132, 142 (1st Dist. 2016).

24. A contract implied-in-fact "is a true contract." *Id.*

25. In order to enter into a valid contract, there must be a "meeting of the minds" between the parties to the contract. *Id.*

26. In order to establish a "meeting of the minds," a party must objectively manifest their acceptance of an offer to form a contract. *Id.*

27. The parties to a contract manifest a mutual intent to enter into a contract by their ordinary course of dealing and the "common understanding of persons." *People ex rel. Hartigan v. Knecht Services, Inc.*, 575 N.E.2d 1378, 1383 (2d Dist. 1991).

28. Here, the parties, for valuable consideration, entered into a valid and enforceable implied-in-fact contract for the purchase of diamonds and other jewelry by the Defendants by engaging in a course of conduct manifesting their intent to be bound by the terms of the Agreement.

29. The Plaintiff made several valid offers to the Defendants for the purchase of an assortment of diamonds and other jewelry by offering to sell specific diamonds and other jewelry to the Defendants at a specifically negotiated price.

30. Every time the Plaintiff made an offer, the Defendants manifested their acceptance of the Plaintiff's offer by stating, in writing, that they wish to purchase the assortment of diamonds and other jewelry.

31. Every time the Plaintiff made an offer, the Defendants manifested their acceptance of the Plaintiff's offer by taking possession of the assortment of diamonds and other jewelry sold to them by the Plaintiff.

32. From approximately December 14, 2015 to March 11, 2020, the Plaintiff performed its obligations pursuant to the Agreement by sending the diamonds and other jewelry that the Defendants specifically requested to the Defendants.

33. The Plaintiff has not received the payments the Defendants were obligated to make to the Plaintiff pursuant to the Agreement.

34. The deadline for the final payment due to the Plaintiff by the Defendants, which was "on or about October, 2020," has passed.

35. The Defendants' failure to repay the Plaintiff for the diamonds and other jewelry sold to the Defendants by the Plaintiff has resulted in pecuniary loss to the Plaintiff.

36. An account stated is "an agreement between the parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance." *Dreyer Medical Clinic, S.C. v. Corral*, 227 Ill.App.3d 221, 226 (2d Dist. 1992).

37. An account stated determines the amount of debt where it has already been established that a contract has been breached. *House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F.Supp.3d 534, 544 (N.D. Ill. 2016).

38. An account stated exists if there was a "meeting of the minds upon the correctness of an amount." *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 477 N.E.2d 513, 519 (1st Dist. 1985).

39. A meeting of the minds is proven by "one party rendering a statement of account to which the other party acquiesces." *Id.*

40. Here, the Plaintiff rendered account statements to the Defendants totaling $460,110.46.

41. When the Plaintiffs sent the Defendants invoices, the Defendants did not dispute the amount owed in the account statements provided to them by the Plaintiff.

42. Therefore, the account statements establish the Defendants owe the Plaintiff $460,110.46.

## COUNT II – BOUNCED CHECK

43. The Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

44. Under Illinois law, a person who issues a check that bounced and who fails to pay the amount of the check to the payee within 30 days "following delivery and acceptance by the addressee of a written demand both by certified mail and by first class mail to the person's last known address or attempted delivery of a written demand sent both by certified mail and by first class mail to the person's last known address and the demand by certified mail is returned to the sender with a notation that delivery was refused or unclaimed shall be liable to the payee or a person subrogated to the rights of the payee for, in addition to the amount owing upon such check or order, damages of treble the amount so owing." 750 ILCS § 5/17-1(E).

45. On March 10, 2020, the Plaintiff received documentation from its bank stating that six (6) checks issued to the Plaintiff by the Defendants were returned as unpaid. *See* Group Exhibit 2.

46. The "return reason" stated on the document from the Plaintiff's bank is "[n]ot enough funds to pay this check." *See* Group Exhibit 2.

47. The value of the six (6) returned checks the Defendants owe the Plaintiff is $200,000.00.

48. On December 23, 2020, the Plaintiff made a written demand to the Defendants' last known address for the amount of the above-mentioned checks. *See* Demand Letter attached as Exhibit 3.

49. The Plaintiff delivered the written demand to the last known addresses of both Defendants.

50. The Plaintiff has complied with the requirements of 750 ILCS § 5/17-1(E).

51. The Plaintiff has still not received valid checks from the Defendants sufficient to compensate the Plaintiff for the value of the six (6) returned checks.

52. Pursuant to 750 ILCS § 5/17-1(E), the Defendants shall be liable to the Plaintiff in the amount owing upon such checks. 750 ILCS § 5/17-1(E).

53. Under 750 ILCS § 5/17-1(E), the Plaintiff is entitled to treble damages. 750 ILCS § 5/17-1(E).

54. Since the value of the checks that bounced is $200,000.00, the Plaintiff is entitled to $800,000.00 in damages.

**Prayer for Relief**

WHEREFORE, MAXMARK, INC. prays for the following:

A.  An Order requiring the Defendants to honor the Agreement and repay all

debts due and owing the Plaintiff by the Defendants;

B.  An award of damages;

C.  Interest, costs, and attorney's fees;

D.  Such further relief as this Court may deem just and equitable.

Respectfully submitted,

/s/ Stacey Lynch

_____

STACEY E. LYNCH

Stacey E. Lynch
Gardi & Haught, Ltd.
Attorney for Client
939 Plum Grove Road
Suite C
Schaumburg, IL 60173
(847) 944-9400 Phone
(847) 944-9401 Fax
Attorney No. 6270194
slynch@gardilaw.com
info@gardilaw.com